May it please the Court, good morning. My name is Joe Gagne. I represent the appellant in this case, Christian Allmendinger. In my time before the Court, I'll show that Mr. Allmendinger received ineffective assistance of counsel on appeal because his appellant counsel failed to raise what's called the merger problem, and that is that Mr. Allmendinger's money laundering counts should have merged into the substantive fraud counts. Just to jump back before I get to the law of the case and briefly recite a few facts that are directly relevant just to this claim. So in 2010, Mr. Allmendinger's counsel, he had the same counsel on appeal as his trial counsel, raised a motion to dismiss in the District Court, and in that motion he raised the merger problem, and he said that counts 9 and counts 11 should be dismissed, these are the money laundering counts, because they fell under the view of this merger problem that was announced by the Supreme Court of the United States v. Santos. And this, I bring it up right now because it's important, because in that motion what he said was that he understood that the District Court limited the application of the merger problem solely to cases, to lotto cases essentially, the same set of operative facts as United States v. Santos, and he expressed his doubt in that motion that the District Court would grant relief on the motion. I'm sorry, I lost you in the very beginning of it. Who said this? So this is Mr. Allmendinger's counsel in his motion to dismiss saying, Judge, I acknowledge that you have previously denied motions on this basis, and I doubt you're going to grant this, but I'm raising it anyway. And the reason why I bring that up is important, because after Mr. Allmendinger was sentenced, there were two cases that came out that essentially went directly against what the District Court had done by limiting the facts. The most important case is United States v. Cloud, and in United States v. Cloud, a panel of the Fourth Circuit applied United States v. Santos to facts that were very, very similar to those in Mr. Allmendinger's case. Now, here's why that's important, because when Mr. Allmendinger's counsel made the decision of what issues to raise on appeal, he did not factor in that change in the law. So when he made the decisions on what issues to raise in appeal, he was weighing the strength of this merger problem issue against what he believed ultimately at the time in 2010 the strength of it was, and his belief at that time was it wasn't that great. How do we know that? We don't, Your Honor. The way we know that is by looking at the case, and looking at the facts of the case, and looking at his explanation in his affidavit. And his explanation in his affidavit is he made the decision on what issues to raise based on the strength of the issues, and he only wanted to raise issues that he thought had a good chance of providing meaningful relief. Now, he raised the substantive reasonableness of Mr. Allmendinger's sentence, and whether that was a cough or a laugh, I think it's important, because I brought up in my brief the number of times that that type of issue is successful, and it is near zero. Yeah, in the whole country, yes. Yes, Your Honor. Not once or maybe twice in the Fourth Circuit. That's very true. It is one of the weakest issues that can be raised. It's an important issue, but on the spectrum of strength of issues, it's not a good one. And here, had he looked at United known that this issue had an extremely high probability of success, and now we know, because Mr. Allmendinger's co-defendant raised the issue before a panel of the Fourth Circuit where he was successful, we know that the chance of success, we have the benefit of hindsight, in other words, and we know that the chance of success was essentially a certainty. He would have been successful had he raised this issue, and the Fourth Circuit would have rendered impellate acquittal on the money laundering counts. Now, the government's position is, and the position of the district court is, well, the district court has announced already that he would have resentenced Mr. Allmendinger to the same sentence if there was any remand. And so that's, the position is essentially on an ineffective assistance of counsel claim. You have two prongs to satisfy. One is deficient performance, and the other is prejudice. And so their position is essentially saying, Mr. Allmendinger cannot show prejudice because the district court would have sentenced him to the same sentence if there was a remand. And the reason why that's wrong is because that is not the standard that prejudice is measured against. Prejudice in this context is measured against whether or not the result of the appeal would have been different, and the result of the appeal is whether or not there would have been a remand. It's not the result of whether, what would have happened down the road on that remand. There's a great case on this. It is United States v. Menino. It is a Third Circuit case where they examined nearly this identical issue where the government said there's no prejudice here because he was resentenced, he would have been resentenced to the same thing. The district court made the same announcement. Doesn't our decision in United States v. Rango address this issue of the test for prejudice? The test for prejudice is announced nearly unanimously in every circuit. Right. So why aren't you, why are you sending us to the third when we've got our own case that says the test for prejudice is whether the petitioners would likely, is not whether they'd likely prevail on remand, but whether we would have reversed in order to remand? Your Honor, the reason why I think Menino is worth considering is because in that case, the district court had made the same announcement. In that case, the district court had said, I'm going to sentence him to the same sentence. That's why the facts are a little more direct, but I think the cases are legion. You're sort of sliding by the question of whether, in fact, there was prejudice, but there is prejudice. I mean, if that was the standard because of the assessment, the Supreme Court law that says just the additional assessment for conviction of another crime constitutes prejudice. Your Honor, I fail to see under any analysis of the facts where prejudice would not be found in this case. Of course, the reason why I slide by the consequences, two convictions rather than one conviction? I agree with you, Your Honor. They are innumerable reasons to find prejudice in this case. The arguments that I'm making are the ones that are directly responsive to the arguments made by the district court and the government, but I think that the other arguments you raised are important, the collateral consequences. What would you have us do? That's the more interesting question. So, there is not clear guidance on whether or not this court has the ability under the issue of judicial economy to decide the appeal itself. Ordinarily, in an ineffective assistance of counsel claim, the remedy is that the court grants an out-of-time appeal, and then the issue would be raised on a direct appeal. I do know that we do have the concept of judicial economy where the court, when it's met with a situation where the case is going to be right back in front of the court anyway, the court is able to decide the merits of the appeal in this proceeding. Well, this is a 2255. It isn't a 2254, so we're not deferring to a state court here. Correct. If the court grants the out-of-time appeal, it will be right back in front of the Fourth Circuit to decide on the merits of the appeal itself. I don't see why this court can't make that decision in this proceeding, but what I don't have is authority saying you can and you're able to do that. You're not saying that such authority doesn't exist. I'm not saying such authority doesn't exist. And what I am saying is that after an exhaustive search, I have found no authority that says you can't. But what I don't have and what I did not put in my brief is authority saying here's where this happened in this case, and you may do this. Why wouldn't we just remand it to the district court? Because the district court applied the wrong legal standard. The district court was saying there's no prejudice because I would have given him the same sentence. Why wouldn't we simply instruct the district court that that's incorrect? Because the issue in this case is whether or not he received ineffective assistance of counsel on appeal, and this court doesn't have to do that. This court can make the decision because it's the de novo standard that, in fact, counsel was ineffective in this regard. I understand that, but why wouldn't we want to send it back to the district court to say you applied the wrong standard in determining this case, applied the correct standard? If the district court grants relief You're saying just a matter of economy? As a matter of economy, there would be no difference between the district court granting relief and this court granting relief. The most judicially efficient thing to do would be to grant relief in this regard now, because if the district court decides, okay, I'm going to analyze it under this new standard and then still fails to grant relief, then we're right back in front of this court again. So you want us to take care of the conviction here? Your Honor, I believe it is possible to render an appellate acquittal on the amount of money laundering counts, which would be the conspiracy to commit money laundering count eight and then the substantive money laundering counts, which are not. There is your client is not going to be freed momentarily. No, he won't, Your Honor. So we don't have a situation where we speed is of the essence. That is correct, Your Honor. Okay. And if there are no other questions, I'll yield the rest of my time back to the court. Thank you, counsel. Ms. Haber. May it please the court. My name is Jessica Haber, and I represent the United States in this matter. This is a case, as your honors know, about a defendant who was convicted of a $90 million fraud and then has experienced, retained criminal defense attorney, a prominent attorney, considered and decided explicitly not to raise this particular issue on appeal. And the decision not to do so ultimately could not have changed the defendant's sentence. This could not possibly constitute in effect. Could change the results for the defendant. It's one, as I understand it, there's one less, if we should say that there was merger here, there's one less conviction. So arguably, the collateral consequences of that might be different in the future. His record would be different. And we also have that Supreme Court case about the special assessment. Your Honor. I don't see how you can say there's no prejudice. You started out your argument saying that not dealing with prejudice, dealing with the first prong. That's fine. But I just don't understand the government's argument about no prejudice. Well, I would like to come back to the first prong of Strickland. Sure. But directing to the second prong, Your Honor, there is no prejudice here because I think we're defining the results or what prejudice is differently. When it comes to the ultimate sentence, we know clearly that Mr. Allmendinger's sentence will remain the same. Judge Payne has told us that. Well, we don't know. Judge Payne could retire. In the case, we'd go to another judge. I mean, you're just assuming that it's going back. Seems to me that you have to rely on speculation in order to say the result would be the same. Well, Your Honor, I think this is akin to situations in which a judge says, these are the guidelines I've calculated, like in United States versus Bolton. These are the guidelines I've calculated. But even if I find out later the guideline analysis was incorrect, I instead would impose the same sentence. What about Rangel? And I think Rangel is very applicable here, Your Honor, more so than the Third Circuit's opinion in Menino. Because the court did not simply look at straight reversal, the court went into specifically whether plain error review would have been satisfied. And in this instance, it's a similar analysis. I mean, this is a truly odd factual scenario in which we know the co-defendant, similarly situated, identically situated, did get the reversal. But the court says here the issue is whether we would have likely reversed in order to remand had the issue been raised on direct appeal, not whether he'd likely prevail on remand. It seems to me your argument is entirely predicated on the proposition or the supposition that he would not prevail on remand. And it seems to me that we've already addressed that and we've said that's the wrong test. Respectfully, Your Honor, I guess I read Rangel a little differently in that in the end, the court found that there was no prejudice under Strickland because it would not have made a difference in the defendant's, in the appellant's ultimate sentence. But that was because of plain error. Correct. But in talking about the lens that we look at, we pretty clearly said you've got to look at whether he'd be successful on appeal rather than what happens afterward in the district court. That's correct, Your Honor. Turning to Justice Keenan's comment about the special assessments, it is my understanding under Third Circuit law, which we cited in our brief, specifically United States v. Ross, that a special assessment alone would not be enough to constitute prejudice under Strickland. But really, I'd like to shift the court's attention to the first prong here of Strickland, and that is performance. Respectfully to Mr. Gagne, I think he reads a little bit too much into the appellate attorney's affidavit provided to the district court. Mr. Pollack, who, as I noted— Excuse me. Who obtained the affidavit? The United States sought—asked the court by motion—asked the district court, please could we— That's what I thought. Yes. Well, the affidavit is under penalty of perjury, and as Mr. Gagne notes, there are instances in which—plenty of instances in which defense attorneys fall on their sword and say they made a mistake. And that's like the Menino case from the Third Circuit. The trial attorney said, we made a mistake here. But here, Mr. Pollack very clearly says he did not make a mistake. He looked specifically at the Santos issue. He decided strategically that he did not want to raise it. Whether—I don't necessarily think that we can read the affidavit as saying, I did not factor in subsequent Fourth Circuit decisions in Cloud and Halstead. Rather, unlike a lot of affidavits, the affidavit says, I wanted to make—I wanted to raise issues that would make a big difference, either get a new trial or a new sentencing altogether, with the judge being told 45 years is ridiculous. But when we're assessing an ordinary case, not this one, we're just assessing the effectiveness of counsel. Don't we make the judge—don't we make the judgment with respect to whether, in fact, the attorney's rationale was, in fact, for example, a strategic decision? I mean, that's our bread and butter. That's what we do all the time. So it's not like we take what he said at face value. We look at it, and we look at the other facts, and we make an assessment of whether it's ineffective. That's right. And the cases are numerous, as Your Honors know. All the obvious phrases. You're supposed to give the attorney deference. You're supposed to assume— You don't give him deference, it seems to me,  If it was ineffective, and he says it's ineffective, courts don't seem to say much about giving him deference. But, you know, in other words, the government wins on either way. That is true, Your Honor. And I will say, in preparing for this argument, I reread Strickland, which I have not read in years. And the types of alleged errors that attorney made are way far worse, if you pardon my vernacular. That attorney, in a death case, did not ask for a PSR. He did not get medical reports. He did not cross-examine medical. As you just recognized, a lot of law since Strickland. That's correct, Your Honor. And that's what makes all these factually specific cases, obviously. But in this instance, it is so unusual to have an attorney with such a basis in the case who tried it, who raised these issues, and decide independently that this was not a good issue to raise on appeal, that the merger issue would get him, at best, a resentencing back before Judge Payne, unless Judge Payne gets hit by a bus or retires, and that would yield the exact same sentence. And that seems to be all the more reasonable when you consider that the co-defendant, who did raise the merger issue, did get the resentencing, is back in prison doing 60 years. And how would you measure that decision not to attack the merger issue with deciding to go with substantive unreasonableness? How do you put that statistical likelihood of success on that one? I recognize that substantive and procedural reasonableness are extremely difficult issues to prevail on. And Mr. Allmendinger cites all the statistics about what a terrible argument this is. All of which you agree with. I agree. But when you do win, you win big. You get an entire reversal of the sentence. You get to go back and say to the judge, this is outrageous, I want a much shorter sentence. And we are talking about a sentence of 45 years for a nonviolent first-time offender. I mean, it is, on the spectrum of sentences for this kind of crime, fairly unusual. That's why I would think that the government would be helpful, even this little small measure, in not press this case. Why is the government pressing it then? I mean, you seem to be making the argument that you agree this is sort of way out of line, 45 years. Weren't you doing that? Yes, Your Honor. So why are you pressing even this little bit, even this modicum of justice here? Why are you still pressing against this? Your Honor, our brief makes clear that the criminal conduct that Mr. Allmendinger engaged in, defrauding folks of their retirement funds. And those folks testified at trial. They came to sentencing. Judge Payne heard two days of testimony from witnesses, from victims who wanted to testify, who sobbed, who brought deceased loved ones' shoes to the podium to talk about how they're in. Very sad stuff. Correcting this error is not going to, according to you, do anything with respect to that. It's not going to get the same sentence, according to you. I do believe it is highly probable if it goes back before Judge Payne, he's getting the same sentence. And that would be legally proper. And it's completely appropriate under the 3553A factors. I would like to note, it is a variant sentence. The guidelines in this case were life. The guidelines in this case do not change if these two counts are reversed here. He remains at a 53 or a 51 and he's capped at 43. I mean, so Judge Payne considered that and said, as outlined in his transcript of the sentencing, that he deliberately did not want to impose a life sentence at 45 years based on the entirety of the criminal conduct. How old is he? I believe he's now in his 40s, Your Honor. And he gave him 45 years? I think he was early 40s back then. That's not life. It's not life, Your Honor, respectfully. I wish you had a policy that said that. Your Honor, and just like Justice Keenan said, you know, you don't know when someone's life could be five years to someone or it could be 50. But with all that in mind, unless the court has any further questions, I do ask that you please affirm Judge Payne's decision and find, oh, let me add one thing. I apologize, Your Honors. Count 8 has been bandied about here. That's the conspiracy to commit money laundering count. The two substantive counts are 9 and 11. Count 8, the conspiracy to commit money laundering, even if Mr. Allmendinger prevails here, that count should not be reversed or remanded because conspiracy, as in this case, back up, conspiracy is different in this instance. In Mr. Abdulwahab's appeal, the co-defendant, this court determined that the conspiracy count was not affected by the merger rule, that the conspiracy did not merge with the mail fraud because there were other payments pled and proven in the conspiracy that could qualify as the predicate acts for the conspiracy to commit money laundering. So in Abdulwahab, that co-defendant did not get a reversal on his count 8 conspiracy to commit money laundering, and nor should Mr. Allmendinger here. So the only two counts truly at issue here are counts 9 and 11, and I ask that you affirm the district court's opinion in this case. Thank you. Do you have anything further? One brief. And it is something worth mentioning that there is a bit of a difference between Mr. Allmendinger's sentencing package and the sentencing package that his co-defendant received. And that is in Mr. Allmendinger's case, he was sentenced to consecutive sentences, whereas his co-defendant was sentenced to one sentencing package that was concurrent. So by entering an appellate acquittal in the money laundering convictions, this court doesn't have to remand it for resentencing. It can enter an appellate acquittal on those sentences, and those sentences would be struck from his overall sentencing package because his sentences are to run consecutively rather than concurrently. So each of those is, I believe each is a 60, I'm sorry, an 80-month sentence for each of those. And so when that is struck, those two 80-month sentences would be struck from the series of consecutive sentences that he received. So it would actually not be necessary to send this back to the district court at all, even for resentencing if the court elects to do that. Well, if he's been sentenced consecutively and the sentence that merged, the crime that was merged is omitted, does he then get a shorter sentence? Is that what you're saying to us? He should, if the court does not send it back for resentencing and instead elects to strike those sentences, then yes, his overall sentence would be shorter by the terms of those specific consecutive sentences. And the reason why- He would be doing an end run around the district court. Correct. A sentencing court. Yes. Okay. And if there are no other further questions on that issue, I'll turn my time back to the court. Thank you very much. Thank you so much. I'm fine. All right, we'll come down to Green Council and proceed to our next case.
judges: Roger L. Gregory, Diana Gribbon Motz, Barbara Milano Keenan